<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| PEN AIR CREDIT UNION,<br><br>            Plaintiff,<br><br>   v.<br><br>FAN-DANE-GO, *et al.*,<br><br>            Defendants. | Civil Action No. 25-01893 (GC) (TJB)<br><br><u>**MEMORANDUM OPINION**</u> |

<u>**CASTNER, District Judge**</u>

       **THIS MATTER** comes before the Court upon Defendant Shawn Steele's Motion to Dismiss Plaintiff Pen Air Credit Union's Complaint (ECF No. 1) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(2).  (ECF No. 19.)  Plaintiff opposed, and Steele did not reply.  (ECF No. 20.)  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendant's Motion to Dismiss is **DENIED**.

**I.     BACKGROUND**

    **A.     Factual Background[1]**

       Plaintiff is a credit union, and Steele is an individual who resides in Florida.  (ECF No. 1 ¶¶ 3-4; ECF No. 19 at 2.)[2]  On June 30, 2023, Plaintiff and Steele entered into a Loan Agreement

---

[1]    On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

[2]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

in the principal amount of $299,243.00.  (*Id.* ¶¶ 1, 10; *see also* ECF No. 1-1.)  The loan was secured by a First Preferred Ship Mortgage on Fan-Dane-Go, a 34-foot, 10-inch Cape Horn recreational vessel with Hull ID and Official No. FAB34126J223 (the Vessel).[3]  (ECF No. 1 ¶¶ 5, 11; *see also* ECF No. 1-2.)  The Vessel is currently located at a marina in Belmar, New Jersey, which is owned by Defendant Seaport Inlet Marina, LLC (the Marina).  (ECF No. 1 ¶ 8.)  The Mortgage was recorded with the United States Coast Guard National Vessel Documentation Center on July 12, 2023, which purportedly "perfected a preferred mortgage lien in favor of [Plaintiff] against the Vessel, effective as of the filing date of the Mortgage."  (ECF No. 1 ¶¶ 11-14; *see also* ECF No. 1-3.)

Plaintiff alleges that Steele is in default of the Loan Agreement.  (ECF No. 1 ¶ 17.)  On September 24, 2024, Plaintiff notified Steele of the default and that under the Loan Agreement "all outstanding amounts were immediately due and owing," which totaled $335,375.19.[4]  (*Id.* ¶¶ 18-19, 23.)  Plaintiff sent Steele multiple demands for payment, but the full amount is still outstanding.  (*Id.* ¶¶ 19-20.)

---

[3]     The Mortgage covers "the whole of the Vessel, together with all masts, towers, boilers, cables, engines, machinery, sails, rigging, auxiliary boats, anchors, chains, tackle, apparel, bowsprits, furniture, fittings, tools, pumps, radar and other electronic or other equipment and supplies as well as all fishing and other attachments and accessories."  (ECF No. 1 ¶ 12.)

[4]     This amount does not include attorneys' fees and costs, interest, late charges, or other fees and costs.  (*Id.* ¶¶ 21-24.)

### B.     Procedural Background[5]

Plaintiff filed a Complaint on March 14, 2025, asserting two claims in admiralty:[6] an *in rem* claim against the Vessel and an *in personam* claim against Steele for breach of contract pursuant to 46 U.S.C. § 31325.[7]  (ECF No. 1.)  On March 19, 2025, Plaintiff filed a Motion seeking entry of *ex parte* orders authorizing the issuance of a warrant for the arrest of the Vessel and appointing National Maritime Services, Inc. to serve as substitute custodian, which the Court granted.  (ECF Nos. 4-6.)  On March 21, 2025, a warrant for the arrest of the Vessel was issued, and it was executed on May 5, 2025.  (ECF Nos. 7, 8.)

On October 15, 2025, Steele filed a Motion to Dismiss the *in personam* claim pled against him.  (ECF No. 19.)  Plaintiff opposed, and Steele did not reply.  (ECF No. 20.)

## II.     <u>LEGAL STANDARD</u>

For purposes of a motion to dismiss pursuant to Rule 12(b)(2), "the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence[,] not mere allegations."  *Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (citation omitted); *see Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (describing

---

[5]     Subject matter jurisdiction is proper.  *See* 28 U.S.C. § 1333 ("The district courts shall have original jurisdiction . . . of: . . . Any civil case of admiralty or maritime jurisdiction[.]"); *see also* 46 U.S.C. § 31325(c) ("The district courts have original jurisdiction of a civil action brought under subsection (b)(1) or (2) of this section.").

[6]     Although Plaintiff named Seaport Inlet Marina, LLC as a Defendant, "[t]he Marina is named in this action solely to assert any interest that it has in the Vessel."  (ECF No. 1 ¶ 9.)

[7]     Under 46 U.S.C. § 31325, a mortgagee can enforce a preferred mortgage on a vessel through an *in rem* action against the vessel.  *See* 46 U.S.C. § 31325(b)(1).  The statute also authorizes a mortgagee to pursue "a civil action *in personam* in admiralty" against the mortgagor, 46 U.S.C. § 31325(b)(2)(A), "if the proceeds of the sale of the vessel do not satisfy the judgment," as "the owner remains liable for the balance of the amount," *Bank of the West v. Sailing Yacht Serendipity*, 101 F. Supp. 3d 238, 248 (E.D.N.Y. 2015).

plaintiff's burden to prove that jurisdiction exists).  When the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004) (citation omitted).  If the plaintiff meets this burden, "the burden shifts to the defendant to establish the presence of other considerations that would render the exercise of personal jurisdiction unreasonable." *Brainbuilders LLC v. EmblemHealth, Inc.*, Civ. No. 20-12703, 2021 WL 2025004, at *3 (D.N.J. May 21, 2021) (quoting *Display Works, LLC v. Bartley*, 182 F. Supp. 3d 166, 172 (D.N.J. 2016)).

## III.   DISCUSSION

Steele argues that this Court lacks personal jurisdiction because Steele resides in Florida and Plaintiff alleges neither that "Defendant Steele purposefully directed any activities toward New Jersey related to the contract with [Plaintiff]" nor that the purported breach "[arose] out of or relate[d] to any activities conducted by Defendant Steele in New Jersey."  (ECF No. 19 at 2.) Plaintiff argues in response that "enter[ing] into a contract to store or service a vessel within the state," as Steele allegedly did with the Marina, "establishes sufficient minimum contacts to satisfy due process and permit the exercise of specific personal jurisdiction."  (ECF No. 20 at 10.)

"Because this suit arises under the district court's admiralty jurisdiction, the due process clause of the fifth amendment determines whether the district court has personal jurisdiction over [Steele]." *DeJames v. Magnificence Carriers, Inc.*, 654 F.2d 280, 283 (3d Cir. 1981) (citing *Fraley v. Chesapeake & Ohio Ry. Co.*, 397 F.2d 1, 3-4 (3d Cir. 1968)).  Because "Congress has not authorized nationwide service of process for admiralty actions," *id.* (citing *DeJames v. Magnificence Carriers, Inc.*, 491 F. Supp. 1276, 1284 (D.N.J. 1980)), service of process must adhere to New Jersey's long-arm rule, which "is intended to extend as far as is constitutionally permissible" under the Fourteenth Amendment, *id.* at 284.  As such, the Court may exercise

4

personal jurisdiction over Steele insofar as Steele has "certain minimum contacts with . . . [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316-17 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)).

Minimum contacts may be established through general (*i.e.*, "all-purpose") or specific (*i.e.*, "case-linked") jurisdiction.  *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Here, Plaintiff solely argues that Defendant's contacts establish specific jurisdiction. (*See, e.g.*, ECF No. 20 at 10 (arguing that entering into a contract to store or service a vessel within the state "permit[s] the exercise of specific personal jurisdiction").)

When analyzing specific jurisdiction, courts focus on whether the defendant has, by some act related to the plaintiff's current cause of action, "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  Such purposeful availment means that the defendant "should reasonably anticipate being haled into court" in that state.  *Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). When a breach of contract is alleged, "the district court must consider the totality of the circumstances" to determine whether personal jurisdiction exists over the defendant.  *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (citing *Remick*, 238 F.3d at 256); *see also Kulko v. Superior Court*, 436 U.S. 84, 92 (1978) ("[T]he 'minimum contacts' test . . . is not susceptible of mechanical application; rather, the facts of each case must be weighed[.]").  The examination requires a "highly realistic" approach that considers prior negotiations, future

5

consequences, and course of dealing. *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1224 (3d Cir. 1992) (citing *Burger King*, 471 U.S. at 479).

In *Bank of West v. Motor Vessel 2000 Fountain 27 Fever*, the plaintiff brought claims in New Jersey federal court against a vessel in New Jersey and the vessel's out-of-state owner after the owner allegedly defaulted on loan payments for the vessel. Civ. No. 00-6007, 2001 WL 1795540, at *3 (D.N.J. Dec. 6, 2001). The Court determined that it had *in rem* jurisdiction over the vessel and then considered whether it had personal jurisdiction over the out-of-state defendant. *Id.* at *3. The defendant lived in New York, bought the vessel in New York, and registered the vessel in New York. *Id.* at *1. While the Court found that "traditional jurisdictional principles" did not permit personal jurisdiction over the owner of the vessel because the plaintiff did not support its allegations about contacts with New Jersey through a sworn affidavit, the Court found that "admiralty jurisdictional principles" permitted the exercise of personal jurisdiction over the defendant. *Id.* at *2-3. The Court held that "the mere presence of [the defendant's] vessel within [New Jersey] satisfies the due process requirement of minimum contacts for personal jurisdiction." *Id.* at *3. The Court relied on the Fifth Circuit's holding in *Great Prize, S.A. v. Mariner Shipping Party, Ltd.*, 967 F.2d 157, 159 (5th Cir. 1992) ("[A] good-faith allegation in the complaint that the *res* is present within the geographical jurisdiction of the court is *the* jurisdictional fact which gives the court *in personam* jurisdiction over the defendant purported to own the *res*.").

The Court finds *Bank of West* instructive as the Vessel at issue in this case is located in New Jersey. *See also E*Trade Consumer Fin. Corp. for E*Trade Bank v. M/V No Moe Dough*, Civ. No. 04-438, Order, ECF No. 67 (M.D. Fla. Aug. 8, 2005) (denying *pro se* defendant's motion to dismiss for lack of personal jurisdiction because "the Ship Mortgage Act, 46 U.S.C. Section 31325 . . .

6

'gives a specific grant of jurisdiction for both *in rem* and *in personam* actions which seek to recover outstanding indebtedness on a preferred ship mortgage'" (citation omitted)).

But even looking beyond *Bank of West*, the Court can appropriately exercise personal jurisdiction over Steele because Steele has minimum contacts with New Jersey as there is an "affiliation between the forum and the underlying controversy," *Goodyear*, 564 U.S. at 919, and because it would not offend traditional notions of fair play and substantial justice. While the loan documents make no reference to New Jersey, Plaintiff avers that Steele "contracted or otherwise arranged" with the Marina to have the Vessel stored in New Jersey since at least November 2024, which overlaps with the time period in which Plaintiff alleges Steele was in default of the Loan Agreement. (ECF No. 20-1 at 2.) As such, "[t]here can be no doubt that defendant was well aware" that continued failure to make mortgage payments "would have direct consequences in New Jersey such that [he] should have been aware of the possibility of litigation arising in that forum." *Lebel v. Everglades Marina, Inc.*, 558 A.2d 1252, 1257 (N.J. 1989); *see also Northrim Bank v. Pearl Bay Seafoods, LLC*, 717 F. Supp. 3d 1026, 1034 (W.D. Wash. 2024) (finding personal jurisdiction over out-of-state defendants in preferred ship mortgage claim case in part because the claim "[arose] out of the [defendants'] activities in Washington, i.e., defaulting on a loan and [m]ortgage agreement on [the vessel]"). Accordingly, "future consequences" of failure to pay under the Loan Agreement took place in New Jersey. *Burke v. Quartey*, 969 F. Supp. 921, 925 (D.N.J. 1997) (finding specific jurisdiction existed because "'future consequences' of the contract took place in New Jersey") (citation omitted).

As to fair play and substantial justice, "[t]he Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness," including "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in

obtaining convenient and effective relief," and "the interstate . . . judicial system's interest in obtaining the most efficient resolution of controversies." *O'Connor*, 496 F.3d at 324. Here, adjudicating the *in personam* claim against Steele would obtain efficient, convenient and effective relief for Plaintiff (and the Marina, which has brought a crossclaim against Steele (*see* ECF No. 26)) given the ongoing related *in rem* proceedings against the Vessel. And New Jersey, as the forum state, likely has a significant interest in resolving this dispute given that the Vessel is located within the State and stored pursuant to an agreement with a New Jersey company. (ECF No. 20-1 at 2). While litigating from Florida may create certain hurdles, the burden on a defendant, even if "substantial," does not "dwarf the interests" of the plaintiff and the forum state. *O'Connor*, 496 F.3d at 325. Therefore, the Court finds that the exercise of personal jurisdiction over Steele comports with the notion of fair play and substantial justice.

## IV.    CONCLUSION

For the foregoing reasons, and other good cause shown, Defendant Steele's Motion to Dismiss (ECF No. 19) is **DENIED**. An appropriate Order follows.

Dated: April 30 , 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

8