<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| PEN AIR CREDIT UNION,<br><br>                    Plaintiff,<br><br>         v.<br><br>FAN-DANE-GO, *et al.*,<br><br>                    Defendants. | Civil Action No. 25-01893 (GC) (TJB)<br><br>**<u>MEMORANDUM ORDER</u>** |

<u>**CASTNER, District Judge**</u>

 **THIS MATTER** comes before the Court upon Plaintiff Pen Air Credit Union's unopposed Motion for Interlocutory Sale of Vessel pursuant to Rule E(9) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure.[1]  (ECF No. 28); and

 **WHEREAS** on March 14, 2025, Plaintiff filed a Complaint in this Court alleging that on June 30, 2023, Plaintiff Pen Air Credit Union and Defendant Shawn Steele entered into a Loan Agreement secured by a First Preferred Ship Mortgage on the vessel Fan-Dane-Go (the Vessel). (ECF No. 1 ¶¶ 5, 10-11.)  Plaintiff further alleged that Steele defaulted on the Loan Agreement, rendering an outstanding balance of $335,375.19, which is currently due and owing.  (*Id.* ¶¶ 17-19.)  Plaintiff notified Steele of the default on September 24, 2024, but it has received no payment to date.  (*Id.* ¶¶ 18-19); and

---

[1] Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1333.

**WHEREAS** on March 19, 2025, Plaintiff moved *ex parte* for orders authorizing the issuance of an arrest warrant for the Vessel and to appoint a substitute custodian of the Vessel, (ECF No. 4), which the Court granted on March 20, 2025, (ECF Nos. 5, 6).  A warrant for arrest issued on March 21, 2025, and the Vessel was arrested on May 5, 2025.  (ECF Nos. 7, 8); and

**WHEREAS** on December 12, 2025, Plaintiff moved for an interlocutory sale of the Vessel. (ECF No. 28.)  No party opposed the Motion;[2] and

**WHEREAS** pursuant to Supplemental Rule E(9), upon application of a party, and prior to a final disposition of the case on the merits, the court may order the interlocutory sale of property that is the subject of an *in rem* action, "with the sales proceeds, or as much of them as will satisfy the judgment, paid into court to await further orders of the court."  Fed. R. Civ. P. Supp. R. E(9); and

**WHEREAS** "[t]he interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process."  *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983).  Indeed, "Supplemental Rule E(9) does not require the final resolution of the merits of any particular claim; instead, it focuses on avoiding the recognized complications associated with protracted maintenance of a vessel under arrest."  *IncredibleBank v. Provocative*, 722 F. Supp. 3d 56, 60 (D.R.I. 2024) (citation omitted); and

**WHEREAS** as stated in Supplemental Rule E(9), the presence of any of the following three circumstances support a grant of an interlocutory sale: (1) the arrested property is "perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action," (2)

---

[2]    Plaintiff also named Seaport Inlet Marina, LLC (the Marina) as a Defendant.  No claims are asserted against the Marina; rather, "[t]he Marina is named in this action solely to assert any interest that it has in the Vessel."  (ECF No. 1 ¶ 9.)

keeping the property under arrest incurs "excessive or disproportionate" expense, or (3) "there is an unreasonable delay in securing release of the property." Fed. R. Civ. P. Supp. R. E(9)(a)(i)(A)-(C); *see also Merchs. Nat'l Bank of Mobile v. Dredge Gen. G.L. Gillespie*, 663 F.2d 1338, 1341 (5th Cir. 1981) ("In order to prevail, the lienors need only show one of the three criteria."); and

**WHEREAS** Plaintiff argues that an interlocutory sale is appropriate here because each of the three circumstances is present. (ECF No. 28-4 at 10-11.)[3] Plaintiff argues that the Vessel is susceptible to deterioration and injury because of continued exposure to the elements and a lack of maintenance services, that the Vessel has been under arrest for more than six months as of the time of filing "with no release in sight," and that "[s]ignificant storage costs are being accumulated" while the Vessel is under arrest. (*Id.* at 6-10.) The Court will consider the presence of each circumstance in turn; and

**WHEREAS** the Court finds that the Vessel is susceptible to deterioration without maintenance. Plaintiff avers that while the Vessel is under arrest, "no one is providing maintenance services to the idle Vessel" and that it is subject to "continued exposure to the elements." (ECF No. 28-4 at 8.) It is a "routine finding" of courts that a vessel's prolonged idleness without maintenance can lead to deterioration. *See, e.g.*, *Cal. Yacht Marina-Cabrillo, LLC v. M/Y Jovita*, Civ. No. 24-5079, 2025 WL 3492386, at *6-7 (C.D. Cal. Mar. 26, 2025) (collecting cases). As such, the Court finds the presence of this circumstance supports an interlocutory sale; and

**WHEREAS** the Court also finds that unreasonable delay weighs in favor of an interlocutory sale. A motion for an interlocutory sale is not typically granted until enough time has passed to allow defendants to provide a bond to secure release of the vessel. "As a general

---

[3] Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

3

rule, defendants are given at least four months to bond a vessel absent some other considerations." *John W. Stone Oil Distrib., L.L.C. v. M/V Lucy*, Civ. No. 09-4440, 2009 WL 4166605, at *1 (E.D. La. Nov. 20, 2009) (quoting *United States v. F/V FORTUNE*, Civ. No. A86-445, 1987 WL 27274 (D. Alaska Apr. 14, 1987)).  Here, the Vessel was arrested on May 5, 2025, and no party has sought the Vessel's release.  (ECF No. 8.)  As of this Memorandum Order, the Vessel has been under arrest for nearly one year.  Many cases have found that delays of significantly shorter length are unreasonable.  *See, e.g.*, *John W. Stone Oil Distrib.*, 2009 WL 4166605, at *2 (4 month delay unreasonable); *Pee Dee State Bank v. F/V WILD TURKEY*, Civ. No. 91-809-18, 1991 WL 355221 (D.S.C. Oct. 9, 1991) (3 month delay unreasonable); *Branch Banking & Trust Co. v. Fishing Vessel TOPLESS*, Civ. No. 12-2364, 2012 WL 6019288, at *4 (D. Md. Nov. 29, 2012) (4 month delay unreasonable); *Colonna's Shipyard, Inc. v. U.S.A.F. Gen. Hoyt S. Vandenberg*, 584 F. Supp. 2d 862, 878 (E.D. Va. 2008) (6 month delay unreasonable); *Merchs. Nat'l Bank*, 663 F.2d at 1342 (8 month delay unreasonable); *E.N. Bisso & Son, Inc. v. M/V Bouchard Girls*, 482 F. Supp. 3d 527, 532-33 (E.D. La. 2020) (8 month delay unreasonable); *20th Cent. Fox Film Corp. v. M.V. Ship Agencies*, 992 F. Supp. 1434, 1438 (M.D. Fla. 1997) (8 month delay unreasonable).  Moreover, "by not opposing the motion for interlocutory sale, [the o]wner effectively admits that it does not intend to secure the release of the [v]essel." *Bank of America, N.A. v. M/V Marine Princess*, Civ. No. 21-559, 2021 WL 12322641, at *4-5 (E.D. La. Dec. 29, 2021); and

**WHEREAS** the Court is skeptical, however, that the expenses of maintaining the boat are excessive or disproportionate.  In considering whether this circumstance is present, some courts consider costs "in relation to the value of the vessel" or "in relation to the amount of the claims against the vessel." *Crescent Towing & Salvage Co., Inc. v. M/V Americana*, Civ. No. 11-131, 2011 WL 13377762, at *5 (E.D. La. Sep. 21, 2011) (citations omitted).  Other courts have

considered expenses in absolute terms, finding expenses of several thousand dollars per month are excessive and disproportionate. *See, e.g.*, *Vineyard Bank v. M/Y Elizabeth I*, No. 08-2044, 2009 WL 799304, at *2 (S.D. Cal. Mar. 23, 2009) ("Maintenance expenses of several thousand dollars per month, particularly where [the d]efendant has made no attempt to answer [the p]laintiff's [c]omplaint or secure the [v]essel's release, are excessive and disproportionate."). Here, Plaintiff seeks $335,375.19 in damages, (ECF No. 1 ¶¶ 6-7), and Plaintiff avers to incurring $155 per day in custody and storage fees as well as $918 per month for hull and machinery insurance, (ECF No. 28-4 at 6-7). This totals $67,591 per year or $5,632.58 per month, a monthly amount that certain courts have found excessive. *See, e.g.*, *Bartell Hotels v. S/L Talus*, 445 F. Supp. 3d 983, 988 (S.D. Cal. 2020) (costs of $3,800 per month were excessive or disproportionate); *Caterpillar Fin. Servs. Corp. v. Coleman*, Civ. No. 99-3821, 1999 WL 33218595, at *2 (C.D. Cal. Aug. 19, 1999) (costs of $1,400 per month "appears to be excessive"). But these daily expenses equate to only 0.06% of the damages sought, a percentage of damages which certain other courts have found were not excessive and disproportionate. *See, e.g.*, *E.N. Bisso*, 482 F. Supp. 3d at 532 (costs neither excessive nor disproportionate where daily expenses were less than 0.01% of the plaintiff's claim and collecting cases). As such, Plaintiff has not necessarily established this circumstance; and

**WHEREAS** nonetheless, because courts grant interlocutory sales where even one circumstance is met, *see, e.g.*, *CAC Maritime, Ltd. v. Redbrick Ventures, Ltd.*, Civ. No. 21-202, 2021 WL 3048405 (D. Del. July 20, 2021) (ordering interlocutory sale after analyzing only presence of excessive expenses), and here, the Court finds two circumstances are present, *see Ironhead Marine, Inc. v. Barge Exiderdome No. 1*, 635 F. Supp. 2d 386, 388-89 (D.N.J. 2009) (ordering interlocutory sale after finding two circumstances applicable), the Court finds an interlocutory sale is appropriate, and for other good cause shown,

**IT IS** on this 30th day of April, 2026 **ORDERED** as follows:

1. Plaintiff's Motion for Interlocutory Sale (ECF No. 28) is **GRANTED**.

2. A telephonic conference is set for May 14, 2026, at 12:00 PM, regarding Plaintiff's Proposed Order filed at ECF No. 28-5. Conference call information will be distributed to the parties through email prior to the meeting.

3. The Clerk's Office is directed to **TERMINATE** the Motion pending at ECF No. 28.

**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**

6